UNITED STATS DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO:

SMG ENTERTAINMENT INC.,
d/b/a SWINGING RICHARDS,
a Florida corporation,

       Plaintiff,

vs.

CITY OF NORTH MIAMI BEACH,
a Florida municipal corporation,

       Defendant.

_____/

# MOTION FOR PRELIMINARY INJUNCTION WITH INCORPORATED
# MEMORANDUM OF LAW

      Plaintiff files this Motion for Preliminary Injunction, pursuant to Rule 65, Fed.R.Civ.P. and Rule 7.1, S.D.Fla.Loc.R., and moves this Court to enter a preliminary injunction enjoining the enforcement of the North Miami Beach Adult Entertainment Code (Ordinances 89-5 and 94-9), and says:

      1.     Plaintiff has filed a Complaint under 42 U.S.C. §1983 claiming that the North Miami Beach Adult Entertainment Code (Ordinances 89-5 and 94-9) cannot be enforced against this Plaintiff because Plaintiff has been specifically exempted from the laws and because those laws are unconstitutional on their face and as applied to the Plaintiff.

      2.     Plaintiff's adult dancing establishment first started doing business well before the enactment of the City's Adult Entertainment Code. As a result, the City grandfathered Plaintiff's predecessor, "Miami Gold," from the effect of the first Ordinance (89-5) through resolution of

the City Commission. *See*, Composite Exhibit "A" attached to Plaintiff's Complaint. When a subsequent Adult Ordinance was enacted, that Ordinance (94-9) specifically exempted Plaintiff's business:

> Whereas, the provisions of this Ordinance shall not apply to the two adult entertainment establishments in the CITY OF NORTH MIAMI BEACH, Florida which are currently licensed by NORTH MIAMI BEACH, but these two establishments shall continue to be subject to all other provisions of the NORTH MIAMI BEACH Code of Ordinances to which they are currently subject, including the sections regarding non-conforming uses, as well as all the terms and conditions of all prior agreements between The City and these two establishments.

3.       The City observed this *de jure* exemption for some 22 years. The City issued annual business licenses to Plaintiff and its predecessors and also approved permits for "after hours" operations. At no time during this 22 year period did the City enforce or threaten to enforce the Adult Entertainment Ordinance against the Plaintiff.

4.       In late 2011, the Plaintiff changed its format from an establishment featuring nude female performers to one featuring nude male performers. As a natural result of that change, Plaintiff's patrons shifted from a primarily heterosexual male clientele to a primarily homosexual male clientele. In all other respects, Plaintiff's business has remained completely unchanged.

5.       The City objects to the presentation of nude male dance and also objects to the gathering of gay men at Plaintiff's establishment. As a result of this objection to the content of Plaintiff's speech and to the sexual orientation of Plaintiff's patrons and performers, the City has announced its intention to enforce the Adult Entertainment Code against the Plaintiff. *See*, Exhibit "C" attached to Plaintiff's Complaint. The City Manager has advised that enforcement activity will begin on May 16, 2012.

6.       The effort to enforce the City's Adult Entertainment Code against the Plaintiff violates Plaintiff's right of Equal Protection guaranteed by the Fourteenth Amendment. The

threat of enforcement after 22 years of uninterrupted operation is not motivated by any legitimate governmental purpose, but is the result of an invidious intent to discriminate against Plaintiff and its patrons because of their sexual orientation and the content of their communications. The City's enforcement regime cannot survive heightened scrutiny.

7.      Even if the City is not estopped from enforcing its Adult Entertainment Code, and even if that enforcement is not motivated by a discriminatory purpose, Plaintiff is entitled to injunctive relief because the Ordinances are unconstitutional on their face. Plaintiff's First Amendment arguments may be summarized as follows:[1]

A.      The Ordinance imposes an unconstitutional prior restraint because the licensing procedures fail to limit the discretion of the decisionmaker, do not require a decision within a specified brief period of time, do not maintain the *status quo* and do not allow for prompt judicial disposition. In short, the Ordinance fails to comport with the requirements adopted by the Supreme Court in FW/PBS v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596 (1990); *See, also*, Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358 (11th Cir. 1999).

B.      The Ordinance is overbroad because it limits certain common dance movements through its prohibition against "fondling or other erotic touching". *See*, Rameses, Inc. v. County of Orange, 481 F. Supp. 2d 1305, 1318-22 (M.D. Fla. 2007).

C.      The Ordinance allows for the suspension and revocation of licenses on a vicarious

---

[1] Plaintiff also asserts a constitutional claim based on the lack of secondary effects evidence in support of the alleged government interest and the lack of alternative avenues of communication (*i.e.*, insufficient sites). Those claims are not presented to the Court for purposes of preliminary injunctive relief because they are too fact-intensive to permit adjudication at this time. Plaintiff specifically reserves the right to present those claims at an appropriate time and does not abandon any of the legal challenges set forth in its Complaint.

basis and without a showing of responsible relationship in violation of due process. *See*, Lady J Lingerie, 176 F3d at 1367-69.

8.      Plaintiff has a clear legal right to offer non-obscene adult entertainment in the form of exotic dance to persons over the age of eighteen. The sexual orientation of Plaintiff's performers and patrons is not a permissible basis to discriminate against Plaintiff's business.

9.      The Complaint filed in this cause is verified. The sworn allegations establish that Plaintiff received a *de jure* exemption from the subject Adult Entertainment Code and that the exemption has been repeatedly recognized and ratified by the City for over twenty years. The Complaint also establishes the impermissible basis for the City's threatened enforcement of those Ordinances; the sexual orientation of Plaintiff's performers and patrons is not a permissible basis to discriminate against Plaintiff's business. The other constitutional defects in the City's Ordinances are apparent on the face of those laws.

10.     Plaintiff has a substantial likelihood of prevailing on the merits of its claims.

11.     Unless this Court issues a preliminary injunction, Plaintiff will be irreparably injured by the deprivation of its rights under the First Amendment. As a matter of law, the deprivation of rights guaranteed under the First and Fourteenth Amendments is an irreparable injury for purposes of injunctive relief.

12.     The injury to Plaintiff should this Court deny this Motion, exceeds any possible harm to Defendant if the Motion is granted. Plaintiff's injury is the loss of its constitutional rights. On the other hand, since no local government may deprive any person of a right guaranteed by the First Amendment, Defendant will suffer no injury if it is prevented from suppressing Plaintiff's right to freedom of expression.

13.     A preliminary injunction preventing the enforcement of the challenged Ordinance will not disserve the public interest. The public has no lawful interest in the enforcement of unconstitutional ordinances which violates the First Amendment. Further, the public's rights under the First Amendment are also being deprived by the provisions challenged herein as the public is being denied access to protected speech.

14.     The Court should exercise its discretion and not require that Plaintiff post a bond, or require that Plaintiff post a nominal bond, because the CITY will incur no costs or damages in the event a preliminary injunction is entered and it is later determined that the government was wrongfully enjoined. The only substantial costs involved are attorney fees, and pursuant to 42 U.S.C. §1988 the CITY cannot recover their attorney fees unless it shows that Plaintiff's lawsuit was frivolous.

## MEMORANDUM OF LAW

### I.      PRELIMINARY INJUNCTION STANDARD.

In order to obtain a preliminary injunction, a plaintiff must show the following: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*). Plaintiff can easily meet each requirement.

## II.   **PLAINTIFF HAS THE REQUISITE STANDING; THIS CASE IS RIPE; AND THERE ARE NO GROUNDS FOR ABSTENTION.**

Courts universally recognize that exotic dance of the kind offered by Plaintiff is protected by the First Amendment. *See, e.g.*, City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 122 S.Ct. 1728 (2002); City of Erie v. Pap's A.M., 529 U.S. 277, 120 S.Ct. 1382 (2000); Barnes v. Glen Theatre, Inc., 501 U.S. 560, 111 S.Ct. 2456 (1991). Plaintiff clearly has standing to challenge the constitutionality of the North Miami Beach Adult Entertainment Code both on its face and as applied to adult businesses. "[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 759, 108 S.Ct. 2138 (1988); *See, also*, U.S. v. Frandsen, 212 F.3d 1231, 1236 (11th Cir. 2000) ("[T]he Supreme Court and this Court consistently have permitted facial challenges to prior restraints on speech without requiring the plaintiff to show that there are no conceivable set of facts where the application of the particular government regulation might or would be constitutional.").

Plaintiff also has "third party standing" to raise this challenge on behalf of others not before the Court even if the Ordinance could be properly applied to Plaintiff's establishment. *See, e.g.*, Odle v. Decatur County, Tenn., 421 F.3d 386, 393 (6th Cir. 2005) ("Traditional standing is not a requirement, i.e., a plaintiff may assert the interests of others not before the court even if it is only their protected expression, not the plaintiff's, that the challenged ordinance is said to infringe."); *See, also*, CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1270 (11th Cir. 2006).

There is no plausible reason for this Court to abstain from ruling in this case.[2]

## III.    PLAINTIFF IS THREATENED WITH IRREPARABLE INJURY.

No lengthy argument on this point is necessary. The deprivation of rights guaranteed under the First Amendment is an irreparable injury as a matter of law. Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976). Since the Plaintiff alleges that it is threatened with the loss of First Amendment rights, irreparable injury is presumed. "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981).

## IV.    THERE IS A STRONG LIKELIHOOD THAT PLAINTIFF WILL PREVAIL ON THE MERITS OF ITS CLAIMS.

### A.    THE ADULT ENTERTAINMENT ORDINANCES DO NOT APPLY TO THE PLAINTIFF, OR CANNOT BE LAWFULLY APPLIED TO THE PLAINTIFF.

Plaintiff has asserted independent causes of action based on Florida law and on the United States Constitution. Judicial conservatism dictates that the Court should rule, if possible, on state law issues first so as to avoid unnecessary decisions based on the Constitution. *See, generally*, Wolston v. Reader's Digest Ass'n, Inc., 443 U.S. 157, 160, n. 2, 99 S.Ct. 2701, 2703 (1979) ("[G]eneral principle that dispositive issues of statutory and local law are to be treated before reaching constitutional issues."). For that reason, Plaintiff is presenting its state law claims

---

[2]  Abstention would not be proper under Younger v. Harris. 401 U.S. 37 (1971) because there are no pending state court proceedings. Likewise, because this case does not present difficult and unsettled areas of state law, Railroad Comm'n v. Pullman, 312 U.S. 496 (1941) is inapplicable. As the Supreme Court said in Hawaii Housing Authority v. Mishkin, 467 U.S. 229, 236 (1984), "abstention from the exercise of federal jurisdiction is the exception, not the rule."

first. If Plaintiff is unsuccessful on its state law claims, this Court will be called upon to enter an injunction finding the subject Ordinances to be unconstitutional on their face and as applied to the Plaintiff.

### (1)      PLAINTIFF IS EXEMPTED ON THE FACE OF THE CITY'S ADULT ENTERTAINMENT ORDINANCES.

The City's most recent Ordinance regulating adult entertainment establishments – ORD. 94-9 – specifically exempts Plaintiff from that law:

> Whereas, the provisions of this Ordinance shall not apply to the two adult entertainment establishments in the CITY OF NORTH MIAMI BEACH, Florida which are currently licensed by NORTH MIAMI BEACH…

(Doc. 1 at 6, ¶28-29; Ex. B). That exemption is entirely in keeping with the several memoranda and resolutions adopted by the City Commission over the years excluding the existing adult clubs from the reach of the new laws. (Doc. 1 at 5, ¶23; Ex. A).

In this case, the Court should find that Plaintiff is exempt from the City's adult entertainment regulations by applying the plain language of Ordinance 94-9:

> In construing a statute, this Court must look to the statute's plain language. *See* Fla. Dep't of Educ. v. Cooper, 858 So.2d 394, 395 (Fla. 1st DCA 2003); Jackson County Hosp. Corp. v. Aldrich, 835 So.2d 318, 328-29 (Fla. 1st DCA 2002); *see also* State v. Rife, 789 So.2d 288, 292 (Fla. 2001) (noting that legislative intent is determined primarily from the language of a statute). Where the language of a statute is clear and unambiguous, it must be given its plain and ordinary meaning. Cooper, 858 So.2d at 395 (citations omitted). Where a statute is ambiguous, courts may then resort to the rules of statutory construction. BellSouth Telecomms., Inc. v. Meeks, 863 So.2d 287, 289 (Fla. 2003). A statute that is in derogation of the common law must be construed narrowly.

Bruner v. GC-GW, Inc., 880 So.2d 1244, 1246 (Fla. 1st DCA 2004); *See, also*, Seagrave v. State of Florida, 802 So.2d 281, 286 (Fla. 2001) ("One of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning…").

To the extent that any construction of the Ordinance provision is necessary, the Court should take into account the City's twenty-two year policy of non-enforcement. *See, e.g.*, <u>Forsyth County, Ga. v. Nationalist Movement</u>, 505 U.S. 123, 131, 112 S. Ct. 2395, 2402 (1992) ("[W]e must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."). This is a case where the City's actions – or in this case, inaction – speak as loudly as the plain words of the Ordinance. The fact that the Adult Entertainment Code was never previously enforced against the Plaintiff is strong evidence that the City never intended for those Ordinances to apply.

### (2) <u>THE CITY IS ESTOPPED FROM APPLYING THE ADULT ENTERTAINMENT ORDINANCES AGAINST THE PLAINTIFF.</u>

The Verified Complaint shows that the Plaintiff and its predecessors in interest invested hundreds of thousands of dollars in the development, maintenance and refurbishment of its facilities in reliance on its ability to lawfully operate there under its present format. In addition, the Plaintiff has committed to long term contracts, including its lease, all because it was assured by the City that adult nude entertainment and the service of alcohol was lawful at its location. (Doc. 1 at 15, ¶¶79-80). Those assurances took the form of an express exemption in Ordinance 94-9, several public votes by the City Commission approving Plaintiff's status as an exempt business, issuance of business licenses and after-hours permits on an annual basis and a history of non-enforcement which has stretched over two decades.[3] With this record, it is obvious that

---

[3] Plaintiff's claims under Florida common law find a Federal analog in the concept of "desuetude". There is a line of cases suggesting that due process may be offended where the government attempts to enforce an obsolete and moribund law. The three elements for a defense of desuetude include an ordinance punishing a crime not recognized at common law (*i.e.*, not *malum in se*); "an open, notorious, and pervasive violation of the statute for a long period" and "a

Plaintiff's reliance on the City's representations was reasonable. It is also obvious that Plaintiff's operations were no secret: the City has had actual knowledge of Plaintiff's format for many years and the precise nature of that format has been discussed with both the City Commission and City staff. Under these circumstances, it would be highly inequitable for the City to ignore its own Code as well as a policy of non-enforcement lasting a generation.

"The reasonable expectation of every citizen 'that he will be dealt with fairly by his government,' can form the basis for application of equitable estoppel against a governmental entity." Council Bros., Inc. v. City of Tallahassee, 634 So. 2d 264, 266 (Fla. 1st DCA 1994). The elements necessary to prove an estoppel are fundamentally similar to those which apply to individuals, with an additional consideration based on public policy:

> The doctrine of equitable estoppel may be invoked against a governmental entity where (1) a property owner in good faith reliance (2) upon some act or omission of the government (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he or she acquired. Id. at 15-16; Sun Cruz Casinos, L.L.C. v. City of Hollywood, 844 So.2d 681, 684 (Fla. 4th DCA 2003); Equity Res., Inc. v. County of Leon, 643 So.2d 1112, 1117 (Fla. 1st DCA 1994); see also Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1334 (11th Cir. 2004)(applying Florida law).

> The doctrine of equitable estoppel, however, may only be applied against a governmental entity under exceptional circumstances. Monroe County v. Hemisphere Equity Realty, Inc., 634 So.2d 745, 747 (Fla. 3d DCA 1994).

Castro v. Miami-Dade County Code Enforcement, 967 So. 2d 230, 234 (Fla. 3d DCA 2007);

See, also, City of Jacksonville v. Coffield, 18 So. 3d 589 (Fla. 1st DCA 2009).

> The additional "exceptional" circumstances necessary to invoke estoppel against a governmental agency consist of (1) conduct by the government that goes beyond mere negligence and that will cause serious injustice; and (2) a showing that the

conspicuous policy of nonenforcement." See, United States v. Agriprocessors, Inc., 2009 WL 2255728 (N.D. Iowa 2009). All of those elements are present here.

application of estoppel will not unduly harm the public interest. Id.; *see also* Alachua County v. Cheshire, 603 So.2d 1334 (Fla. 1st DCA 1992). Equitable estoppel has been most frequently invoked against government agencies in cases in which the government has either made affirmative representations or knowingly acquiesced in plaintiff's conduct. [citations omitted].

Associated Indus. Ins. Co., Inc. v. State, Dept. of Labor & Employment Sec., 923 So. 2d 1252, 1254-55 (Fla. 1st DCA 2006).

In this case, Plaintiff's business operated openly with the permission and actual encouragement of North Miami Beach for over twenty-years. It would be grossly inequitable for the Plaintiff to face the loss of its entire investment over a disagreement which is ultimately based on the City's unconstitutional animus against gay citizens.

**B.    ENFORCEMENT OF THE CITY'S ADULT ENTERTAINMENT ORDINANCES VIOLATES THE EQUAL PROTECTION RIGHTS OF PLAINTIFF, ITS PERFORMERS AND PATRONS.**

The Fourteenth Amendment prohibits states from enforcing laws in an invidiously discriminatory manner. *See*, Village of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 265, 97 S.Ct. 555 (1977). "[T]o properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately." Thigpen v. Bibb County, 223 F.3d 1231, 1237 (11th Cir. 2000) *abrogated on other grounds by* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002). The Supreme Court has also recognized "class of one" equal protection claims. *See*, Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). A plaintiff can establish a "class of one" claim by showing that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.

The Verified Complaint establishes the fact that Plaintiff and its predecessors have provided adult entertainment with nude dance performances, coupled with the sale of alcohol, for over twenty years on the same footing as at least one other comparable establishment in North Miami Beach. The only thing that has changed over those twenty-plus years is the gender of Plaintiff's performers and the sexual orientation of Plaintiff's clientele. Specifically, Plaintiff now offers nude performances by male performers in place of female performers. That change has been accompanied by a shift in Plaintiff's clientele to a predominately gay audience. The City announced that it intended to change its policy of non-enforcement within weeks of Plaintiff's shift in format. These facts all appear on the record. (Doc. 1 at 3-12).

The City's adverse action against Plaintiff's gay business does not take place in a historic vacuum. To say that our society has not been accepting of homosexuals would be an extraordinary understatement. Gay Americans have been the victims of religious persecution,[4] physical assaults,[5] and legal discrimination throughout most of our history.[6] *De jure* barriers to their full participation as citizens are only now falling.[7]

---

[4] The anti-gay demonstrations ("God Hates Fags") of the Westboro Baptist Church represent an extreme example of religious bigotry as well as a proper application of the First Amendment. *See*, Snyder v. Phelps, _ U.S. __, 131 S. Ct. 1207 (2011).

[5] The torture and murder of Matthew Shepard in 1998 was a nationally publicized story that associated a human face with the hate crimes directed against gay men. *See, generally*, http://en.wikipedia.org/wiki/Matthew_Shepard#Murder.

[6] *See, e.g.*, 10 U.S.C. § 654(b) (Don't Ask Don't Tell); 1 U.S.C.A. § 7 (Defense of Marriage Act [DOMA]); §63.042(3), Fla. Stat. (2006) (Ban on adoptions by homosexuals).

[7] The three laws referenced in footnote 6 have been declared unconstitutional and/or have been repealed: (1) Don't Ask, Don't Tell Repeal Act of 2010, Pub.L. No. 111–322, 124 Stat. 3516 (Dec. 22, 2010) [At the time of repeal, the law was the subject of a permanent injunction finding the statute to be unconstitutional. *See*, Log Cabin Republicans v. United States, 716 F. Supp. 2d

Within the past ten years or so, there has been a sea change in our society and in the law. A number of Courts have struck down bans against gay marriage[8] and the United States Government has wisely decided that the Defense of Marriage Act (DOMA) is not constitutionally defensible.[9] Most impressively, the United States Supreme Court has stood up for gay rights, declaring in the landmark case of <u>Lawrence v. Texas</u>, 539 U.S. 558, 573-74, 123 S. Ct. 2472, 2481-82 (2003) that homosexuals have the same liberty interests as heterosexual citizens:

> These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State." *Ibid.*

> Persons in a homosexual relationship may seek autonomy for these purposes, just as heterosexual persons do.

*Quoting*, <u>Planned Parenthood of Southeastern Pa. v. Casey</u>, 505 U.S. 833, 112 S.Ct. 2791 (1992);

*See, also*, <u>Romer v. Evans</u>, 517 U.S. 620, 116 S.Ct. 1620 (1996).

It is now abundantly clear that Gay Americans are Americans. They are entitled to all of the rights and privileges of citizenship guaranteed by the Equal Protection Clause. The Federal

---

884 (C.D. Cal. 2010)]; (2) <u>Golinski v. U.S. Office of Pers. Mgmt.</u>, __ F.Supp.2d __, 2012 WL 569685 (N.D. Cal. Feb. 22, 2012) and <u>Gill v. Office of Pers. Mgmt.</u>, 699 F. Supp. 2d 374 (D. Mass. 2010) (Declaring the Defense of Marriage Act [DOMA] to be unconstitutional); and (3) <u>Florida Dept. of Children & Families v. Adoption of X.X.G.</u>, 45 So. 3d 79 (Fla. 3d DCA 2010) (striking down Florida's "Anita Bryant" law banning gay adoptions).

[8] *See, e.g.*, <u>Kerrigan v. Comm'r of Pub. Health</u>, 289 Conn. 135, 957 A.2d 407 (2008); <u>Varnum v. Brien</u>, 763 N.W.2d 862 (Iowa 2009).

[9] *See,* "Statement of the Attorney General on Litigation Involving the Defense of Marriage Act" dated Feb. 23, 2011 at http://www.justice.gov/opa/pr/ 2011/February/11-ag-222.html [accessed April 9, 2012].

Courts have come to realize that laws treating gay citizens differently than other citizens are subject to review under heightened scrutiny:

> Here, having analyzed the factors, the Court holds that the appropriate level of scrutiny to use when reviewing statutory classifications based on sexual orientation is heightened scrutiny.…
>
> Under heightened scrutiny, the proponents of the statute must establish, at a minimum, that the classification is "substantially related to an important governmental objective." Clark, 486 U.S. at 461, 108 S.Ct. 1910. Moreover, under any form of heightened scrutiny, the statute may only be defended by reference to the actual legislative bases advanced to legitimate the statute or the "actual [governmental] purpose, not rationalizations for actions in fact differently grounded." United States v. Virginia, 518 U.S. 515, 535–36, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996).

Golinski, ___ F.Supp.2d  at *14-15, 2012 WL 569685 at *14-15; *See, also*, Statement of the Attorney General on Litigation Involving the Defense of Marriage Act, dated Feb. 23, 2011, *supra* ("After careful consideration, including a review of my recommendation, the President has concluded that given a number of factors, including a documented history of discrimination, classifications based on sexual orientation should be subject to a more heightened standard of scrutiny.").

The City's response to the change in Plaintiff's format was motivated by an anti-gay bias and is not supportable by any legitimate interest – or even a rational basis. It is time for North Miami Beach to "get the message": the Constitution will not tolerate invidious discrimination against gay citizens. Gay patrons are entitled to all of the constitutional rights of their straight brothers and sisters. Similarly, Plaintiff's male dancers are entitled to perform in the nude and to display their bodies to the same extent as their female counterparts. Likewise, Plaintiff must be permitted to sponsor and promote nude male performances to the same extent as comparable businesses which sponsor and promote nude female performances.

Plaintiff is entitled to an injunction to prevent the City from enforcing the Adult Entertainment Ordinance as a discriminatory tool again its gay citizens.

**B.     THE LICENSING PROVISIONS OF THE ADULT CODE IMPOSE AN UNCONSTITUTIONAL PRIOR RESTRAINT ON THEIR FACE.**

Section 2A-23(a) of the City's Adult Entertainment Ordinance requires adult businesses to obtain a license before they can open and operate:

> (a)     *Requirement*.   No adult entertainment establishment shall be permitted to operate without having first been granted an adult entertainment license under this code.

Whenever one is required to obtain government permission to engage in speech, the permitting scheme is a prior restraint on activities protected by the First Amendment. *See*, Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150-51, 89 S.Ct. 935, 938-39 (1969). When an ordinance acts as a prior restraint, the ordinance is presumed to be unconstitutional. In such cases, the government bears a heavy burden to demonstrate that the restriction is valid. *See*, Bantam Books v. Sullivan, 372 U.S. 58, 83 S.Ct. 631 (1963).

FW/PBS v. City of Dallas, is the leading case on the subject of prior restraints and adult businesses:

> Our cases addressing prior restraints have identified two evils that will not be tolerated in such schemes. First, a scheme that places "unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." Lakewood v. Plain Dealer Publ. Co., 486 U.S. 750, 757, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988)… [long string citation omitted]… "It is well settled by a long line of recent decisions of this Court that an ordinance which… makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official – as by requiring a permit or license which may be granted or withheld in the discretion of such official – is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." Shuttlesworth, *supra*, 394 U.S., at 151, 89 S.Ct., at 938-39 (*quoting* Straub, *supra*, 355 U.S., at 322, 78 S.Ct. at 282).

> Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible. Freedman, *supra*, 380 U.S. at 59, 85 S.Ct. at 739….

439 U.S. at 225-26, 110 S.Ct. at 604-05.

The Supreme Court also requires that any prior restraint provide for prompt judicial review of permitting decisions. In a licensing context "[o]nly a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression." Freedman v. Maryland, 380 U.S. 51, 58, 85 S.Ct. 734, 739 (1965); *See, also*, FW/PBS, 439 U.S. at 228, 110 S.Ct. at 606. Where adult businesses are at issue, prompt judicial review envisions a prompt *disposition* of the license dispute. *See*, City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774, 780-81, 124 S.Ct. 2219, 2224 (2004).

### (1)   THE ORDINANCE LACKS PRECISE SUBSTANTIVE STANDARDS TO LIMIT THE DISCRETION OF THE PERMITTING OFFICIALS.

The First Amendment will not tolerate any discretion in licensing determinations affecting free expression. All of the standards for review must be spelled out in detail. *See,* Shuttlesworth, *supra* (Permitting ordinances must contain precise and objective criteria to guide licensing decisions; an ordinance that gives too much discretion to public officials is invalid); *See, also*, Lady J. Lingerie, 176 F.3d at 1362 ("This implies that some measure of discretion is acceptable, but the cases show that virtually any amount of discretion beyond the merely ministerial is suspect.").

The North Miami Beach Ordinance is unconstitutional under FW/PBS because the substantive standards of the City's licensing ordinance are imprecise. In particular, Sections 2A-21, 2A-24(a) and 2A-24(c) allow the permitting official to pick and choose from applicable laws

in his unfettered discretion in deciding whether to grant or deny a license. All of those Sections include a variation on the following language:

> Sec. 2A-24
>
> (a)      Noncompliance of premises.    No license shall be issued if the city manager, as a result of investigations, determines that the proposed licensed premises does not meet all applicable building, zoning, health and fire codes, ordinances, statutes and regulations, whether federal, state or local, nor shall any license be issued on false information given in the application for license.

This form of discretion has been condemned as unconstitutional for nearly a decade. *See*, Fly Fish v. Cocoa Beach, 337 F.3d 1301, 1312 (11th Cir. 2003) (Striking license provisions which required the denial an adult license if "the granting of the application would violate either a State statute or ordinance or any order from a court of law that effectively prohibits the applicant from obtaining an adult entertainment establishment license"). The §2A-24(c) disqualification where the license "would violate a statute, ordinance or law…" is unconstitutional for the same reason. See, Id. at 1312-13.

## 2.      THE ORDINANCE FAILS TO REQUIRE THAT THE PERMITTING DECISION BE RENDERED WITHIN A SPECIFIED BRIEF PERIOD OF TIME.

All laws which impose a prior restraint must identify a brief, specified period of time within which the permitting decision must be made.

> Where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion. A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech.

FW/PBS, 110 S.Ct. at 604-05. This Circuit has taken a very strict view of what constitutes a specified brief period of time. *See, e.g.*, Lady J. Lingerie, *supra*; Redner v. Dean, 29 F.3d 1495 (11th Cir. 1994); Artistic Entertainment, Inc. v. City of Warner Robins, 223 F.3d 1306, 1310-11

(11th Cir. 2000). Upon close examination, the North Miami Beach Code does not provide any definite time limits for licensing decisions.

Section 2A-27 provides a nominal 45 day period for the licensing decision and allows the conditional right to open if the decision is not made within that time period. However, the Code also provides  for the automatic termination of that conditional right:

> The City Manager shall approve or disapprove all applications within forty-five (45) days from the date a completed application has been submitted. Upon the expiration of forty-five (45) days the applicant shall be permitted to initiate operating the adult entertainment establishment for which a license was sought, unless the city manager notifies the applicant of a preliminary denial of the license….

The Constitution requires that the applicant be issued a license or be allowed to speak without a license upon the expiration of the review period. The Constitution does not allow a conditional right to operate "unless the city manager notifies the applicant of a preliminary denial":

> Although the ordinance requires a decision on an adult entertainment license application within thirty days, it also permits the establishment whose application is not so resolved to open, conditioned on the ultimate licensing decision of the City.  Effectively, this gives the City an unlimited length of time to make the application decision.  We have previously held such a conditional right to be an unconstitutional prior restraint. Lady J. Lingerie, 176 F.3d at 1363. We said there:
>
> > Does it matter that an applicant may begin operating while the [zoning] board is still considering its application?  We think not. The ordinance only permits applicants to operate conditionally. Once the board denies an application for an exception, the applicant must close its doors. A conditional exception is no exception at all.

Fly Fish, 337 F.3d at 1313-14.

The procedures for administrative review also fail the requirements of FW/PBS and Lady J. Lingerie. Section 2A-34 of the Ordinance governs appeals from license denials, suspension and revocations. The Ordinance states only that a hearing will be scheduled within 30 days. This

provision does not come close to meeting constitutional standards for two closely related reasons.

First, the Ordinance does not actually require that a decision be made at the conclusion of the hearing.[10] While that may seem to be an intuitive feature of such ordinances, the law in this Circuit requires an actual statement that the *decision* will be rendered within a specified time; not merely that a hearing will be held. *See*, Lady J. Lingerie, 176 F.3d at 1363. ("The board must hold a public hearing within 63 days after a business applies for an exception... But nothing requires a decision within 63 days, or any other time period. The ordinance's failure to require a deadline for decision renders it unconstitutional.").

Second, the Ordinance does not specify what happens if a hearing is not scheduled within 30 days or if a decision is not made promptly after the conclusion of the hearing. Controlling case  law in this Circuit states that a speaker must be granted  the  affirmative right to engage in speech activities without a license under such circumstances. If that right is not apparent on the face of the ordinance, the law is unconstitutional. Redner v. Dean, 29 F.3d 1495 (11th Cir. 1994) is the controlling case on this issue. *See, also*, Artistic Entertainment, *supra*; Lady J. Lingerie, *supra*; Fly Fish, *supra*; Florida Cannabis Action Network, Inc., v. City of Jacksonville, 130 F.Supp.2d 1358, 1367 (M.D. Fla. 2001) ("At first blush, it may appear somewhat excessive to require the City to plan for the contingency that it violates its own ordinance. However, the

---

[10]    The procedures for review of license suspension and revocations fail FW/PBS for a separate reason: they do not preserve the *status quo* pending judicial disposition. Section 2A-27(c) [governing revocations] and Section 2A-33 [governing suspensions] both provide that the business must cease operations 15 days after notice from the City Manager. The denial of speech begins even before an administrative appeal, much less a judicial determination.   FW/PBS provides that denials, suspensions and revocations of adult business licenses may not be enforced until the restraint on speech is approved by a judicial officer: "any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained". FW/PBS, 493 U.S. at 227, 110 S. Ct. at 606.

Eleventh Circuit has squarely confronted this issue and held that a permitting scheme must allow the applicant to begin engaging in the expressive activity for which the permit is sought in the event that the municipality fails to comply with the time limit; otherwise, the time limit is illusory.").

<strong>(3)   THE ORDINANCE FAILS TO PROVIDE FOR PROMPT JUDICIAL DISPOSITION.</strong>

The North Miami Beach Code also fails to provide for effective judicial review as required by the Supreme Court in <u>FW/PBS</u> and <u>City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.</u>, 541 U.S. 774, 124 S. Ct. 2219 (2004). The requirement that an adult business take an administrative appeal of the licensing decision effectively deprives the speaker of his day in Court. *See*, §2A-34. This is true because the administrative decision can be delayed indefinitely. Without an administrative decision, there is no exhaustion of administrative remedies and, therefore, no access to the courts. *See*, <u>Palm Lake Partners II, LLC v. C & C Powerline, Inc.</u>, 38 So. 3d 844, 853 (Fla. 1st DCA 2010) ("It is now well settled that where adequate administrative remedies are available, it is improper to seek relief in the circuit court before those remedies are exhausted.").

The failure to provide a definite and speedy end to the administrative process renders the licensing process unconstitutional in a First Amendment context:

> As there is no assurance within the Land Development Code that the City's final determination will not be delayed indefinitely and there is no clear indication when an applicant has exhausted administrative remedies, the Land Development Code fails to set forth the appropriate time at which an applicant may request that a court review the City's decision. Thus, as the Land Development Code could potentially delay judicial review indefinitely, the Land Development Code constitutes a prior restraint on applicants' First Amendment freedoms.

<u>Red-Eyed Jack, Inc. v. City of Daytona Beach</u>, 165 F.Supp.2d 1322, 1329 (M.D. Fla. 2001).

### C.      THE RESTRICTION ON EROTIC TOUCHING IS OVERBROAD.

Section 2A-7(25)(c) defines "Specified Sexual Activity" to include "fondling or other erotic touching of human genitals, pubic region, buttocks, anus or female breast." An almost identical definition of "specified sexual acts" was declared unconstitutional in <u>Rameses, Inc. v. County of Orange</u>, 481 F. Supp. 2d 1305, 1320-21 (M.D. Fla. 2007):

> The fondling provision… does not confine itself to fondling between workers and patrons; it proscribes the movements that a dancer may make while dancing on a stage removed from the audience.…
> …
> [s]ubsection (3)'s attempt to limit the non-obscene self-touching by adult entertainers impermissibly encroaches on a dancer's ability to engage in a perhaps disfavored, but nonetheless protected, form of expression. Therefore, the definition of SSA that prohibits fondling, stroking, or rubbing of human genitals or anus - short of masturbation - as referenced in section 3-129(3) is unconstitutional.

*See, also*, <u>Schultz v. City of Cumberland</u>, 228 F.3d 831, 847 (7th Cir. 2000) (Same).[11]

### D.      MISCELLANEOUS CONSTITUTIONAL DEFECTS.

Space constraints prevent a full briefing of the many unconstitutional provisions of the Adult Entertainment Ordinance. Accordingly, those challenges are addressed in extremely truncated form:

A.      Section 2A-33(c) expressly makes employers responsible for the acts of their employees on a vicarious basis without a showing that the license holder had actual knowledge that a violation had occurred or the ability to prevent or redress that violation. The Ordinance

---

[11]    The definition of "Specified Sexual Activity" is adopted and incorporated into many other provisions of the Ordinance. *See, e.g.*, §2A-7(3) (definition of "adult dancing establishment") and §2A-47(3) (conduct restrictions). All of those restrictions are defective because they are burdened by the same overbreadth that dooms 2A-7(25)(c).

imposes vicarious liability without a showing of responsible relationship in violation of the Due Process Clause of the Fourteenth Amendment. *See*, Lady J. Lingerie, 176 F.3d at 1367-69; *See, also*, Rameses, Inc., 481 F. Supp. 2d at 1326-27; Millennium Restaurants Group, Inc. v. City of Dallas, Texas, 191 F.Supp.2d 802, 808-809 (N.D. Tex. 2002); Threesome Entertainment v. Strittmather, 4 F.Supp.2d 710 (N.D. Ohio 1998).

"Proof of a defendant's position alone is not enough." Lady J. Lingerie, 176 F.3d at 1368. Rather, there has to be a showing of a "responsible relationship": "an owner-defendant is only responsible for acts or omissions that he has the power to prevent." Id. In application, the Courts have limited liability for license holders only to their own acts and to those of management-level employees. Even then, liability can be imposed only in those circumstances where the violations are known to the responsible party:

> Only the acts of those people who have the authority and responsibility to supervise and control workers at the establishment can be imputed to the license holder, and even those acts will be imputed only *if* the licensee was culpably responsible, meaning the licensee has knowledge of the violations being committed, condones the violations, or is reckless, careless, negligent, or lacking diligence in allowing the violations to occur.

Rameses, Inc., 481 F. Supp. 2d at 1326-27. [12]

B.   Section 2A-36 states that an applicant for an adult license is "deemed to have consented to the provision of this code. "Under the unconstitutional conditions doctrine, 'a state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an

---

[12]   The suspension and revocation provisions also suffer from a procedural defect: they allow adverse action against a license and the immediate closure of a business without a pre-deprivation hearing and without prior notice to the license holder in violation of basic principles of due process. *See*, Fuentes v. Shevin, 407 U.S. 67, 81-82, 92 S.Ct. 1983, 1994-95 (1972).

entertainment permit, on an agreement to refrain from exercising one's constitutional rights ....'" R.S.W.W., Inc. v. City of Keego Harbor, 397 F.3d 427, 434 (6th Cir. 2005).

C.      Section 2A-25(b)(1)( c) requires the disclosure of "principal shareholders" and makes the corporation liable for their actions. The shareholder disclosure requirement is overbroad, infringes on the Plaintiff's First Amendment rights, and is contrary to the controlling Eleventh Circuit precedent in Lady J Lingerie, 176 F3d at 1366-67.

## E.      THE UNCONSTITUTIONAL PROVISIONS ARE NOT SEVERABLE

The Adult Entertainment Ordinance is a delicately balanced licensing and regulatory scheme. Given the obvious inter-connectedness of its complex parts, and the vital constitutional issues at stake, the many unconstitutional provisions cannot be severed from the remainder of the ordinance. *See, generally*, Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1268 (11th Cir. 2005); *See, also*, Cafe Erotica of Florida, Inc. v. St. Johns County, 360 F.3d 1274, 1292 (11th Cir. 2004) (Ordinance not severable where discretion granted to licensing authorities permeates the ordinance.

## IV.    THE HARM TO PLAINTIFF IF A PRELIMINARY INJUNCTION DOES NOT ISSUE OUTWEIGHS THE HARM TO THE DEFENDANT IT IS NOT ENJOINED.

As a matter of law, the harm to Plaintiff is irreparable. However, if a preliminary injunction issues, North Miami Beach will suffer no harm, as the City will be precluded from enforcing a patently unconstitutional Adult Entertainment Code. A preliminary injunction, prohibiting the enforcement of an unconstitutional restriction on speech, will not harm the government, but will further the constitutional rights of all citizens in the community.

In applying the "balancing of harms" test, this Court should consider the likelihood of success on the merits. "[A] sliding scale can be employed, balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits." Florida Medical Ass'n v. U.S. Dept. of Health, Education and Welfare, 601 F.2d 199, 201, n. 2 (5th Cir. 1979). In this case the likelihood that the Plaintiff will prevail on the merits is overwhelming.

## VI.   A PRELIMINARY INJUNCTION WILL NOT BE CONTRARY TO THE PUBLIC INTEREST.

An injunction which prevents the enforcement of a patently unconstitutional ordinance does not disserve the public interest. To the contrary, the public's interest lies in the vindication of rights guaranteed under the First Amendment. "[I]t is always in the public interest to prevent violation of a party's constitutional rights." Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, Tennessee,  274 F.3d 377, 400 (6th Cir. 2001). This requested injunction is in the highest traditions of our system of government, and will not disserve any legitimate governmental interest. Accordingly, the bond requirement, if any, should be *de minimis*.

WHEREFORE, Plaintiff prays for the following relief:

A.     Entry of a preliminary injunction, restraining Defendant, its agents, employees, and all others acting in concert with Defendant who receive actual notice of the injunction, from enforcing the North Miami Beach Ault Entertainment Ordinances (Ordinances 89-5 and 94-9).

B.     Entry of an Order to Show Cause why the preliminary injunction should not be made permanent.

C.     Such other and further relief as this Court deems just.

DATED:  April 18, 2012

*Respectfully submitted,*

Law Offices of Norman C. Powell              Benjamin & Aaronson, P.A.

                                                          /s/  Daniel R. Aaronson
                                             _____

NORMAN C. POWELL, Esquire                    DANIEL R. AARONSON, Esquire
17100 N.E. 19th Avenue                       Fla. Bar No.: 314579
North Miami Beach, Florida 33162             JAMES S. BENJAMIN, Esquire
(786) 279-1603 (Fax) (786) 279-1607          Florida Bar No.: 293245
n@normancpowell.com                          One Financial Plaza; Suite 1615
                                             Fort Lauderdale, Florida 33394
                                             (954) 779-1700 / (954) 779-1771 (Fax)
                                             danaaron@bellsouth.net

                    *Attorneys for Plaintiff*